1
2
3
4
5                    **IN THE UNITED STATES DISTRICT COURT**

6                      **FOR THE DISTRICT OF ARIZONA**

7

8    Jacob Magallanes,                          No. CV-15-00312-TUC-JAS (BPV)

9                    Petitioner,                **REPORT AND**
                                                **RECOMMENDATION**
10   v.

11   Charles Ryan, et al.,

12                    Respondents.

13

14          Pending before the Court is Petitioner's *pro se* Petition under 28 U.S.C. § 2254 for

15   a Writ of Habeas Corpus by a Person in State Custody (Non-Death Penalty).  (Doc. 1).

16   Respondents have filed a Limited Answer (Doc. 10), and Petitioner filed a Reply (Doc.

17   11).  Pursuant to the Rules of Practice of this Court, this matter was referred to the

18   undersigned Magistrate Judge for a Report and Recommendation. For the following

19   reasons, the Magistrate Judge recommends that the District Court, after its independent

20   review, deny the Petition.

21   **I.    FACTUAL & PROCEDURAL BACKGROUND**

22         **A.    CONVICTION AND DIRECT APPEAL**

23          In 2010, Petitioner was indicted in Arizona Superior Court, Pima County, on

24   charges of:  (Count 1) aggravated assault, deadly weapon/dangerous instrument, a class

25   three felony; (Count 2) aggravated assault causing serious physical injury, a class three

26   felony; and (Count 3) possession of a deadly weapon by a prohibited possessor, a class

27   four felony.  (Answer, Exh. A).  The state filed allegations of the dangerous nature of the

28   offenses alleged in Counts 1 and 2.  (*Id.*).  The state also alleged a historical prior

conviction of aggravated assault, deadly weapon/dangerous instrument, a serious/violent offense involving a weapon. (*Id.*).

The Arizona Court of Appeals summarized the evidence supporting Petitioner's conviction as follows:

> Before Magallanes's first trial, which ended in a mistrial when the jury could not reach a verdict, he had disclosed pursuant to Rule 15.2, Ariz. R.Crim. P., that he would be raising an alibi defense, which would be supported by the testimony of his mother, Alma Magallanes. The judge who presided over that trial gave the jury an alibi instruction that was consistent with Revised Arizona Jury Instructions ("RAJI") No. 43. [footnote omitted] On the second day of Magallanes's second trial, which was held before a different judge, the parties discussed jury instructions shortly before the state rested; defense counsel requested the alibi instruction that the trial court had given in the first trial. The court responded, "I don't find there's sufficient evidence to support an alibi instruction," conceding Magallanes's last witness had not yet testified and inviting trial counsel to "make an avowal or offer of proof" with respect to the anticipated testimony.
>
> Counsel avowed to the trial court that he expected Magallanes's mother to testify, as she had during the first trial, that she and Magallanes had been home all night and that Magallanes had been "home in the living room playing video games at 2:00 o'clock in the morning when the shooting took place." The court said it would allow Magallanes to introduce the testimony and would permit him "to argue it to the jury and they can take it into consideration." But, the court added, "I think that the jury instructions that the Court plans on giving are sufficient to cover that evidence that you plan on introducing, and I don't think there is sufficient evidence for me to give what would otherwise be a theory of the case instruction on alibi."
>
> Alma Magallanes testified Magallanes had been living with her and she had seen him at home the night of the shooting, playing video games "from 2:00 a.m. until about 4:30." The state had introduced evidence earlier in the trial that Magallanes and two other men, Joey Avalos and Francisco Javier Martinez, had gone to the home of the victim, Robert M., and his younger brother, then sixteen-year-old Raymond, at around 2:00 or 3:00 in the morning on October 19, 2010, looking for Raymond. Raymond and Robert knew all three of these men; Robert testified he had known Magallanes for about three years. Raymond went outside, where the men were waiting. They became aggressive and tried to "jump" him; Raymond went back inside the house and woke up Robert. Robert testified he went outside the house and confronted the men. He testified further that

- 2 -

Magallanes pulled a pistol-grip shotgun out of his pant leg and pointed it at Robert's face. When Robert shoved the shotgun away, Magallanes again pointed it at Robert's face and then pointed it to Robert's leg and fired, shattering Robert's femur "from [his] hip to [his] knee."

Robert told officers who had responded to the scene that "Jacob" had shot him. At around 5:00 that morning, a Tucson police officer who had been maintaining surveillance of Magallanes's house heard the "sound of a shotgun being racked," loaded or unloaded repeatedly. After other officers arrived, they found Magallanes outside in his carport, with a pump-action, pistol-grip shotgun containing three twelve-gauge Winchester slug shells, about ten feet away from him on the hood of a car in the carport. A shotgun shell found at the site of the shooting had Magallanes's DNA (deoxyribonucleic acid) on it.

(Answer, Exh. I at 2-4).

The jury deciding Petitioner's second trial convicted him "of two counts of aggravated assault, one count based on his use of a deadly weapon (a firearm) and the other based on his having caused serious physical injury. After finding [Petitioner] admitted he had one historical prior felony conviction, a non-dangerous offense, the trial court sentenced him to concurrent, partially aggravated prison terms of ten years on each count." (*Id.* at 2; *see also* Answer, Exh. U (at trial, "[t]he weapons count was severed from the aggravated assault counts and the case went to trial on just those charges.")).

Petitioner, though counsel, filed a direct appeal in which he argued that the trial court abused its discretion in refusing to give Petitioner's requested alibi instruction to the jury. (Answer at 4 (citing Answer, Exh. H at 3-19)). The Arizona Court of Appeals agreed, but found the error was harmless and affirmed Petitioner's convictions and sentences. (Answer at 5 (citing Answer, Exh. I)). The Arizona Supreme Court denied Petitioner's Petition for Review without comment. (*Id.* (citing Answer, Exh. K)).

### B.     POST-CONVICTION RELIEF PROCEEDINGS

Petitioner filed a timely notice of post-conviction relief ("PCR") pursuant to Rule 32 of the Arizona Rules of Criminal Procedure, and the state trial court appointed counsel to represent him. (*Id.* (citing Answer, Exhs. L, M)). Appointed PCR counsel filed a notice stating that he could find no meritorious issue to raise in a PCR proceeding, and

requested that Petitioner be permitted extra time to file a *pro se* PCR petition. (*Id.* (citing Answer, Exh. N)). Thereafter, Petitioner filed a *pro se* PCR Petition raising claims of violations of Petitioner's right to due process and Sixth Amendment right to counsel between his arrest on October 19, 2010 and his indictment filed ten days later on October 29, 2010, with regard to pre-indictment delay. (*Id.* (citing Answer, Exh. O at 3-5)). Petitioner also filed some extraneous motions related to his claim and the state's request for an extension to file an answer. (*See* Answer at 5).

On August 1, 2014, the trial court summarily denied relief, stating that Petitioner had "failed to state a colorable claim for which he is entitled to relief pursuant to Rule 32. . . ." (Answer, Exh. U at 2). The court also denied the remainder of Petitioner's motions. (*See* Answer, Exh. U). Petitioner did not seek appellate court review of the trial court's ruling. (Answer at 5-6).

On December 3, 2014, Petitioner filed a second PCR notice. (Answer at 6 (citing Answer, Exh. W)). In his accompanying PCR Petition, Petitioner argued that his trial counsel was ineffective in violation of the Sixth Amendment, having "caused the loss of a beneficial plea." (Answer, Exh. W at 1; *see generally,* Answer, Exh. W). Petitioner also cited what he referred to as "The '*Martinez* Exception'"[1] to support his argument that his "successive claim of the ineffective assistance of counsel" was "substantial" and should be reviewed. (Answer, Exh. W at 1). Petitioner alleged that trial counsel advised him "to sandbag the State with the unreasonable contention that no plea would be accepted from the state if it included any prison time at all" despite that "[c]onviction at trial was assured beyond a reasonable doubt and to a moral certainty" in light of the evidence against him. (*Id.* at 2 *see also id.* at 7-9). Petitioner asserted that "if counsel would have been effective, and given . . . proper legal advice that he was going to be convicted, and a plea was greatly in his favor, the state would have offered a plea and the [Petitioner] would have accepted it early in the process." (*Id.* at 3-4)). Instead, according to Petitioner, trial counsel did not inform him of the plea discussions, but instead advised

---

[1] *See Martinez v. Ryan,* 566 U.S. 1 (2012).

Petitioner not to appear or participate in the hearing where a plea was discussed, nor did counsel pursue a plea bargain. (*Id.* at 6 (citing April 25, 2011 transcript)).

The trial court dismissed Petitioner's successive PCR action, holding that that Petitioner's claim was precluded under Rule 32.2(a)(2), (3), and (c). (Answer, Exh. X). Petitioner sought appellate court review, again relying on the April 25, 2011 transcript to argue that "the state was willing to offer a plea of 3-8.75 years" but counsel failed to inform him about it. (*See* Answer, Exh. Y (Doc. 10-5 at 3); Reply (Doc. 11 at 3)). The appellate court affirmed the trial court's ruling that Petitioner's successive PCR Petition was precluded under Rule 32.2(a) "because it could have been raised in his first post-conviction proceeding." (Answer, Exh. Z at 3); *see also* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under this rule based upon any ground . . . [t]hat has been waived . . . in any previous collateral proceeding."). The court went on to state that "[n]othing in *Martinez* alters that result. . . . It does not apply to successive post-conviction claims under Rule 32." (*Id.* (citations omitted)). Petitioner did not seek review by the Arizona Supreme Court. (Answer at 6).

## II.    PETITIONER'S FEDERAL HABEAS PETITION

Petitioner raises one ground for federal habeas relief:  that PCR counsel and trial counsel were ineffective. As to trial counsel, Petitioner alleges that counsel advised him that he would be exonerated at trial and to reject "the Beneficial Plea offer . . . ." (Petition at 6). Petitioner goes on to argue that PCR counsel was ineffective for failing to raise a claim that trial counsel had been ineffective with regard to the advice about the Beneficial Plea offer. (*Id.*). Petitioner further asserts that because his claims are substantial, any procedural default should be excused under *Martinez.* (*Id.* at 11).

Respondents do not dispute the timeliness of Petitioner's Petition. (*See generally* Answer). Respondents contend that Petitioner's claim is procedurally defaulted and, thus, precluded from federal habeas review. (Answer at 11-13).

Petitioner filed a Reply consisting of a copy of his petition for state appellate court review of the trial court's denial of his successive PCR Petition. Therein, Petitioner

argues that trial counsel was ineffective for failing to inform him that "the state was willing to offer a plea of 3-8.75 years.  Magallanes had no idea any plea offers were on the table at all, because his lawyer advised him to not attend the hearing on April 25, 2011.  If Magallanes had been advised the plea was available, he would have accepted it."  (Reply (Doc. 11 at 3) (citing Rule 32 affidavit (*See* Answer, Exh. W Doc. 10-4 at 46)).

## III.  STANDARDS

### A.  PROCEDURAL DEFAULT

Under the Antiterrorism and Effective Death Penalty Act, a writ of habeas corpus cannot be granted unless it appears that the petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1). To exhaust state court remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 n. 3 (9th Cir. 2005) (quoting *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999)).

A claim is fairly presented if the petitioner has described the operative facts and the federal legal theory on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277–78 (1971). A petitioner must clearly alert the state court that he is alleging a specific federal constitutional violation. *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004).

In Arizona, there are two procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and post-conviction relief ("PCR") proceedings. Rule 32 of the Arizona Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain

exceptions and the petitioner can justify his omission of the claim from a prior petition or his failure to present the claim in a timely manner. *See* Ariz. R. Crim. P. 32.1(d)–(h), 32.2(b), 32.4(a).

A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991), *modified on other grounds by Martinez,* 566 U.S. at 13-16. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (explaining that the district court must consider whether the claim could be pursued by any presently available state remedy). Therefore, in the present case, if there are claims that were not raised previously in state court, the Court must determine whether Petitioner has state remedies currently available to him pursuant to Rule 32. *See Ortiz*, 149 F.3d at 931. If no remedies are currently available, Petitioner's claims are "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

If there are claims that were fairly presented in state court but found defaulted on state procedural grounds, such claims will be found procedurally defaulted in federal court so long as the state procedural bar was independent of federal law and adequate to warrant preclusion of federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). It is well established that Arizona's preclusion rule is independent of federal law, *see Stewart v. Smith*, 536 U.S. 856, 860 (2002), and the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim. *See Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir.), *cert. denied*, 135 S. Ct. 710 (2014) (Arizona's waiver rules are independent and adequate bases for denying relief); *Ortiz*, 149 F.3d at 932 (Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (finding

Arizona not "irregular" in application of procedural default rules); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996) (same).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). As a general matter, habeas review of a defaulted claim is barred unless a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Coleman*, 501 U.S. at 750. *But see Martinez,* 566 U.S. at 13-14 (the Supreme Court, has recognized a "narrow exception" to *Coleman*'s procedural default principle by holding that: "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.") Ordinarily, "cause" to excuse a default exists if a petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 753. "Prejudice" is actual harm resulting from the alleged constitutional error or violation. *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). To establish prejudice resulting from a procedural default, the petitioner bears the burden of showing not merely that the errors at his trial were possibly prejudicial, but that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension. *United States v. Frady*, 456 U.S. 152, 170 (1982).

A habeas petitioner "may also qualify for relief from his procedural default if he can show that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008) (citing *Schlup v. Delo*, 513 U.S. 298, 321(1995)). *See also Majoy v. Roe*, 296 F.3d 770, 776–777 (9th Cir. 2002) (analyzing this exception in a non-capital case). This exception to the procedural default rule is limited to habeas petitioners who can establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup*, 513 U.S. at 327; *see also Cook*, 538 F.3d at 1028. "'To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it

be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial.'" *Cook*, 538 F.3d at 1028 (quoting *Schlup*, 513 U.S. at 324).

### B. APPLICATION OF *MARTINEZ* TO EXCUSE PROCEDURAL DEFAULT

In *Coleman*, the Supreme Court held that ineffective assistance of counsel in post-conviction proceedings does not establish cause for the procedural default of a claim. 501 U.S. at 753. In *Martinez*, however, the Court established a "narrow exception" to the rule announced in *Coleman*. The *Martinez* Court explained:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17; *see also Trevino v. Thaler*, __ U.S __, 133 S. Ct. 1911, 1918 (2013) (noting that *Martinez* may apply to a procedurally defaulted claim of ineffective assistance of trial counsel claim if "the claim...was a 'substantial' claim [and] the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding" (quoting *Martinez,* 566 U.S. at 17). *But see Davila v. Davis,* __ U.S. __, 137 S.Ct. 2058 (2017) (*Martinez's* scope does not extend to procedurally defaulted claims of ineffective appellate counsel).

Under *Martinez*, a petitioner may establish cause for the procedural default of a claim of ineffective assistance of trial counsel, "where the state (like Arizona) required the petitioner to raise that claim in collateral proceedings, by demonstrating two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668...(1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez,* 566 U.S. at 14); *see Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan,* 813 F.3d 798 (9th Cir. 2015); *Dickens v. Ryan*, 740 F.3d

1302, 1319-20 (9th Cir. 2014) (en banc).

To demonstrate cause and prejudice sufficient to excuse the procedural default under *Martinez*, a petitioner must make two showings. "First, to establish 'cause,' he must establish that his counsel in the state post-conviction proceeding was ineffective under the standards of *Strickland. Strickland*, in turn, requires him to establish that both (a) post-conviction counsel's performance was deficient, and (b) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Clabourne,* 745 F.3d at 377 (citations omitted). Determining whether there was a reasonable probability of a different outcome "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377–78. Second, "to establish 'prejudice,' [the petitioner] must establish that his "'underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Id.* (quoting *Martinez,* 566 U.S. at 14).

The Ninth Circuit has acknowledged that "[t]o demonstrate that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, it will generally be necessary to look through to what happened at the trial stage." *Id. See also Sexton v. Cozner,* 679 F.3d 1150, 1161 (9th Cir. 2012) (where trial counsel was not ineffective with regard to defaulted claim, post-conviction counsel could not have been ineffective for failing to raise the defaulted claim at the PCR stage).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are governed by the principles set forth in *Strickland*, 466 U.S. at 674. To prevail under *Strickland,* a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687–88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

the time." *Id.* at 689.  To satisfy *Strickland's* first prong, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*  (internal quotation marks and citation omitted).  The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

The Supreme Court has acknowledged that because "plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks . . . ,  [s]trict adherence to the *Strickland* standard [is] all the more essential when reviewing choices an attorney made at the plea bargain stage."  *Premo v. Moore,* 562 U.S. 115, 125 (2011).

To satisfy *Strickland's* second prong, a petitioner must affirmatively prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

The court need not address both components of the inquiry, or follow any

particular order in assessing deficiency and prejudice. *Id.* at 697. If it is easier to dispose of a claim on just one of the components, then that course should be taken. *Id.*

**IV.   DISCUSSION**

Petitioner does not dispute that his claim of ineffective assistance of trial counsel is procedurally defaulted.  Instead, he argues that the procedural default is excused under *Martinez*.[2]  As discussed above, to fall within the *Martinez* exception, Petitioner must establish, among other things, that his defaulted, underlying claim of ineffective assistance of trial counsel is "substantial".  Respondents argue that because Petitioner's claim is not substantial, his procedural default is not excused under *Martinez* thus precluding federal habeas review.

To determine whether a claim is "substantial" for the purposes of procedural default, a court need only "conduct a preliminary assessment" of the petitioner's underlying claim of ineffective assistance of trial counsel, *Smith v. Ryan,* 823 F.3d 1270, 1296 (9th Cir. 2016), to determine whether it "has some merit." *Martinez,* 566 U.S. at 14. In discussing this standard, the *Martinez* Court incorporated the standard for issuing a certificate of appealability which involves a threshold inquiry into whether the petitioner has shown "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Detrich v. Ryan,* 740 F.3d 1237, 1245 (9th Cir. 2013) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 226 (2003) (internal quotation marks and alterations omitted)).  "Stated otherwise, a claim is 'insubstantial' if 'it does not have any merit or ... is wholly without factual support.'" *Id.* (quoting *Martinez*, 566 U.S. at 15-16).  Accordingly, to determine whether Petitioner has established cause to excuse the procedural default, the Court conducts a preliminary assessment of his underlying claim that trial counsel was ineffective. *See Smith,* 823 F.3d at 1296.

---

[2] The record also supports the conclusion that the claim is defaulted.  The state appellate court's application of Rule 32.2(a)(3) constitutes an independent and adequate state-law bar to federal habeas review of the claim. *See e.g., Hurles,* 752 F.3d at 780; *Ortiz*, 149 F.3d at 932.

The Court examines the question of whether a claim of ineffective assistance of trial counsel is "substantial" under the standard stated in *Strickland*, 466 U.S. 668. Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy *Martinez;* if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." *Martinez,* 566 U.S. at 16.

## A. THE STATE COURT RECORD

During status conferences on January 12 and 25, 2011, in Petitioner's presence, defense counsel advised the court that the parties had been unable to reach a plea agreement. (Answer, Exhs. B, C; *see also* Answer, Exh. C (on January 25, 2011 defense counsel advised "that no formal plea offer was made as no agreement was reached between the parties."). The "Beneficial Plea offer" at issue was discussed at an April 25, 2011 pre-trial "hearing re: pending motions/matters".[3] (*See* Answer at 12-13 (citing Answer, Exh. BB); Answer, Exh. BB; Reply (Doc. 11 at 12)). Petitioner, who was not in custody at the time, did not appear at the April 25, 2011 hearing and although defense counsel stated that he thought Petitioner was going to attend, defense counsel waived Petitioner's appearance. (Answer, Exh. BB at 2).

When the trial court, in discussing the status of the case, inquired whether there were "any ongoing discussions about a possible non-trial disposition . . .", defense counsel responded: "[M]y client said that he wasn't going to plead to anything that would require prison time. He does have a prior so he's facing mandatory prison time, including the fact that this is a dangerous nature offense, but he also has a prior." (*Id.* at 2-3). Defense counsel went on to state that the prosecutor was not "going to offer

---

[3] The April 25, 2011 hearing occurred prior to Petitioner's first trial, which ended in a mistrial because the jury could not reach a verdict. (*See* Answer, Exh. C (order setting the trial for May 3, 2011); Answer, Exh. BB at 26 (on April 25, 2011, the trial court re-affirmed the May 3, 2011 trial date); Answer, Exhs. D, E (minute entries reflect that Petitioner's second trial, which resulted in conviction, occurred on July 6 and 7, 2011); *see also State v. Magallanes,* CR 20103723-001, Arizona Superior Court, Pima County (May 3 and 4, 2011 minute entries from Petitioner's first trial ending in a mistrial). Pursuant to Fed.R.Evid. 201 the Court takes judicial notice of the state court record regarding the date of Petitioner's first trial.

anything where probation available was going to be part of the plea.  So my client said he wasn't going to take anything that was prison only, he would take his chances at trial.  So that's where we have stood."  (*Id.* at 3).

The prosecutor stated that "once counsel communicated that to me, I really stopped thinking about it because it would have to be a prison only due to discharging a shotgun and hitting a vital part of the victim's leg, and he almost died, really."  (*Id.*).  The prosecutor also pointed out that based on the State's "guideline system, discharging a weapon, certainly he's got a prior, it would have been some period of time in prison."  (*Id.*).

After observing that Petitioner was facing between 10 and 20 years if convicted of one class three felony, the court inquired whether the prosecutor "would be willing to offer a plea to one count of aggravated assault, deadly weapon, with no probation available with a range of three to eight point seven five years, no probation."  (*Id.* at 3-4; *see also id.* at 4 (the court confirmed it was contemplating a plea to "a non-dangerous class three[]" with no prior.)).  The prosecutor, after clarifying that the plea would be to a dangerous nature offense, stated that he would have to obtain "authorization, which is usually a phone call. . . . And it might be a good idea, I have no problem with taking it over there and going through the process, but a class three, first time offense."  (*Id.* at 5).

Defense counsel pointed out that his client was facing:

a minimum of five, presumptive of seven and a half and a maximum of fifteen.  That's what they are going to go on.  The prior is meaningless for all intents and purposes because it was not a dangerous prior.

Now because he was facing a minimum of five, my client wasn't going to take it.  Now if he is offered a class three non-dangerous first time offense, no probation available, you are looking at two through eight point seven five years, a class three aggravated assault.  I would certainly discuss that with him and he would certainly consider taking that type of deal.  And obviously I would tell him to give it serious consideration.

(*Id.* at 5-6; *see also id.* at 7).

The prosecutor stated that "the enticement would be to offer, we would call it a non-dangerous but I think statutorily it would still fit as a serious offense."  (*Id.* at 6).  However, the prosecutor was concerned about how the conviction would be categorized

- 14 -

if Petitioner committed a future offense involving a weapon and indicated he needed to consider whether the offer was appropriate: "[I]f he's already had one shot, I don't want to give him another shot." (*Id.*). The prosecutor went on to state:

> this is not the time to decide that but I think if say he pled to a non-dangerous, we will call it a non-dangerous, but I think it is still categorized itself because a weapon was used, a judge at a later point if there was another event down the road he could still say, no, you used a weapon, that's a serious offense and then this next offense is a serious offense, therefore I can sentence you under the serious offender statutes. One of them which is via the third one the Court can go to 25 or 35 or life depending on the case. And I think those would still qualify and that's one of my requirements. I suppose.

(*Id.* at 7-8).

The court stated that it did not expect counsel to make a decision at this point, but requested both counsel to "explore from your own perspectives whether or not something can work." (*Id.* at 8). The discussion then turned to pending motions and timing of the trial. The prosecutor asked for a continuance because he was still awaiting DNA results, the victim was scheduled for surgery close to the scheduled trial date, "[a]nd perhaps this isn't that crucial but perhaps that would give us more time to negotiate something that is not a trial if his client is willing to go to prison." (*Id.* at 22). The court denied the prosecutor's request for a continuance and re-affirmed the May 3, 2011 trial date. (*Id.* at 24, 26).

**B.    ANALYSIS**

Petitioner appears to advance conflicting positions as to how trial counsel was allegedly ineffective. First, in his Petition, Petitioner claims that trial counsel was ineffective for advising Petitioner that "he would be exonerated at trial and to reject" what Petitioner refers to as "the Beneficial Plea offer." (Doc. 1 at 6). However, Petitioner's Reply, and the record before the state court during Petitioner's successive PCR proceeding, addresses only Petitioner's claim that trial counsel failed to inform him about plea discussions on April 25, 2011 that, according to Petitioner, indicated the prosecution offered a plea of 3 to 8.75 years. (Reply (Doc. 11 at 3) ("If Magallanes had been advised the plea was available, he would have accepted it.")). Respondents

characterize Petitioner's claim as "argu[ing] that his trial counsel had caused him to lose a beneficial plea agreement, and that appointed counsel during his first PCR proceeding had 'missed th[at] substantial claim of IAC.'" (Answer at 11 (quoting Petition at 6)).

A criminal defendant has the right to effective representation by counsel during plea negotiations. *See e.g. Padilla v. Kentucky,* 559 U.S. 356 2010); *Premo,* 562 U.S. at 126; *Missouri v. Frye,* 566 U.S. 133, 141 (2012); *Lafler v. Cooper,* 566 U.S. 156 164 (2012); *State v. Donald,* 198 Ariz. 406, 10 P.3d 1193, 1198 (2000). The law is clear that "[a]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution . . .", *Frye,* 566 U.S. at 145, and failure to do so constitutes unreasonable conduct that meets the first prong of the *Strickland* test. *Frye,* 566 U.S. at 146-48; *United States v. Blaylock,* 20 F.3d 1458, 1466 (9th Cir. 1994).

To establish prejudice from ineffective assistance of counsel in a case where a formal plea offer has lapsed or been rejected because of counsel's deficient performance, Petitioner must show a reasonable probability that had counsel conveyed the formal offer, Petitioner would have accepted the formal offer, resulting in a more favorable sentence than imposed after trial. *See Frye,* 566 U.S. at 147-49 (to establish prejudice where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendant must show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time"). Additionally, Petitioner "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.* at 147. "'This further showing is of particular importance because a defendant has no right to be offered a plea.'" *Id.* at 148 (quoting *Weatherford v. Bursey,* 429 U.S. 545, 561 (1977)); *see also State v. Jackson,* 209 Ariz. 13, 16, 97 P.3d 113, 116 (App. 2004) (noting same).

Petitioner's claim in Ground One of his federal habeas Petition that his attorney advised him "to reject the Beneficial Plea offer" (Petition at 6), is wholly without factual support. Petitioner steadfastly maintained during proceedings on his successive PCR

Petition and to this Court in his Reply that trial counsel never informed him about the plea offer. (*See* Answer, Exh. W (Doc. 10-4 at 46) (Petitioner's affidavit statement that: "If my lawyer had informed me of the events that transpired at the hearing on 4/25/11, I would have accepted the plea as represented by the prosecutor and not elected to go to trial."); *see also* Reply (Doc. 11)).

Petitioner's assertions that his counsel never informed him about the alleged offer, undermines any claim that counsel could have advised Petitioner to reject said offer. Moreover, the transcript of the April 25, 2011 hearing[4] also contradicts Petitioner's claim that the prosecution extended a plea offer. To begin with, "the Beneficial Plea offer" of 3 to 8.75 years in prison was not made by the prosecution; instead, it was a proposed resolution made by the trial court which has no authority to extend plea offers. The prosecutor's statements at the hearing support the conclusion that he was unable to offer a plea at the hearing because he was not yet ready to make a lenient offer, which would require supervisory approval. Additionally, although the prosecutor may have been willing to consider extending a lenient offer, he made clear that he wanted to be sure that the plea was framed in a way that Petitioner would be sentenced under the serious offender statutes in the event Petitioner committed a future offense and that "this is not the time to decide . . ." exactly how to do that. (Answer, Exh. BB at 6-8). The court confirmed that it did not "expect a decision to be made at this point, but if you can both explore from your own perspectives whether or not something can work." (*Id.* at 8). The fact that no offer was extended at the hearing is also supported by the prosecutor's request at the hearing that the trial be continued, in part, to provide counsel "more time to negotiate something that is not a trial if his client is willing to go to prison." (*Id.* at 22; *see also id.* at 24 (the continuance was denied)). In sum, the transcript of the April 25, 2011 hearing leaves no doubt that the prosecution did not extend a plea offer, formal or

---

[4] The Supreme Court has observed that "the plea-bargaining process is often in flux, with no clear standards or timelines and with no judicial supervision of the discussions between prosecution and defense." *Frye*, 566 U.S. at 143. In the instant case, unlike most cases, the parties and the Court have the benefit of the transcript of the plea discussion at issue.

otherwise, during that hearing. Consequently, Petitioner's claim that defense counsel advised him to reject said offer is wholly without factual support and, thus, wholly without merit. *See e.g. United States v. Granado,* 2016 WL 6902456, *3 (E.D. Pa. May 6, 2016) (collecting cases for the premise that "[p]etitioner cannot show that he was prejudiced by counsel's alleged advice to reject a plea offer that was never made."). Consequently, Petitioner has failed to establish that the underlying claim of ineffective assistance of trial counsel is substantial under *Martinez.*

To the extent that Petitioner appears to claim that trial counsel's deficient performance in not telling Petitioner about "the Beneficial Plea offer" (Petition at 6) caused Petitioner to lose out on that offer, the claim is not substantial for the same reasons as discussed above. Defense counsel cannot be ineffective for failing to tell Petitioner about a non-existent plea offer. Thus, Petitioner's claim that trial counsel failed to inform him about "the Beneficial plea offer" (Petition at 6) is not substantial under *Martinez* because such a claim "is wholly without factual support[.]" *Martinez,* 566 U.S. at 16.

Moreover, to any extent Petitioner claims that trial counsel failed to inform him about the April 25, 2011 discussion concerning potential plea offers, such a claim is not a substantial one. Some courts have "demonstrated a willingness to adopt a broad view of *Frye* premised on the integral role of plea bargains in the criminal justice system. This view holds that 'even if a firm offer is not conveyed to defense counsel, when the government indicates it is willing to negotiate a resolution in a case, defense counsel has a duty to engage in the negotiation process. Counsel can be constitutionally ineffective in the plea negotiation process if they fail to convey to the defendant the government's articulated willingness to resolve a case by negotiation or [the government's] proposed [] resolution to the case.'" *United States v. Merlino,* 2014 WL 793987, *4 (D. Mass. Feb. 28, 2014) (citing *United States v. Polatis,* 2013 WL 1149842, at *10 n.6 (D. Utah Mar. 19, 2013)); *see also Ramirez v. United States,* 751 F.3d 604, 608 (8th Cir. 2014) (in a case involving an informal plea offer, the prejudice analysis includes consideration of whether the petitioner has "shown that a reasonable probability existed that the

government would have extended a plea offer."); *United States v. Brooks,* 2015 WL 5837636, *6 (D. Kan. Oct. 6, 2015) (acknowledging that "[i]t may be more difficult for a defendant to establish the necessary prejudice in the absence of a formal plea offer, since the defendant would be required to show that the Government would in fact have made a particular offer, that the defendant would have accepted it, and that the Court would have accepted the plea agreement.").

Here there was no offer proposed by the prosecution. Nor, even if such a claim could in the right circumstances form the basis for deficient performance under *Strickland, see supra,* can Petitioner establish prejudice in light of the fact that Petitioner has failed to suggest, let alone demonstrate, a reasonable probability that the prosecution would have extended the plea offer suggested by the trial court.[5] At the time of the April 2011 hearing, Petitioner's instructions to defense counsel were that he would reject any prison-only offer. Defense counsel was required to rely on Petitioner's representation. Although defense counsel under the circumstances properly waived Petitioner's appearance at the hearing, which was otherwise anticipated by defense counsel, Petitioner's failure to attend and express a willingness to serve a prison-only sentence blocked defense counsel's ability to seek any prison-only offer. As to Petitioner's assertion that defense counsel told him there was no need to attend the hearing, counsel's contemporaneous statements at the hearing before the trial judge that he thought Petitioner was going to appear calls into question Petitioner's post-conviction statement to the contrary.

The record also reflects that the April 2011 plea discussion occurred prior to the first trial that ended in a mistrial. The fact of the mistrial cuts against Petitioner's argument that there was no viable defense and a conviction was guaranteed at that time. (*See* Petition at 6; Reply (Doc. 11 at 4)). In light of the mistrial, there is no reason to believe that Petitioner would want to accept a prison only offer and the record does not demonstrate that any plea negotiations were sought after the first, trial.

---

[5] In this case, such a showing would necessarily have to include that the prosecutor would have successfully obtained supervisory approval to extend the offer.

In any event, consistent with Petitioner's representations in the successive PCR proceeding and before this Court that he would have taken a prison-only plea despite advising defense counsel he would not, defense counsel's statements during the April 2011 hearing did inform the prosecution that Petitioner would be willing to consider a prison-only plea offer. (*See* Answer, Exh. BB at 6; *see also id.* at 22 (prosecutor requesting a continuance, in part, for additional time to "negotiate something that is not a trial if [Petitioner] is willing to go to prison."). As discussed above, the prosecutor was unable to offer a plea at the hearing because he was not yet ready to make a lenient offer, which would require supervisory approval. His statements in the record also support the conclusion that he needed additional time to consider the appropriate plea disposition in light of Petitioner's prior history of violence. Ultimately, the prosecution never actually extended an offer, presumably because the DNA evidence eviscerated Petitioner's theories of defense and/or Petitioner's criminal history made the possibility of an offer questionable. Consequently, on the instant record, Petitioner has failed to establish prejudice resulting from defense counsel's alleged ineffectiveness for failing to tell Petitioner about the April 25, 2011 plea discussion.

Finally, to any extent the Petitioner could be attempting to raise a freestanding claim of ineffective assistance of PCR counsel, a federal habeas petitioner cannot raise ineffectiveness of PCR counsel as a freestanding constitutional claim. *See Martinez,* 566 U.S. at 8; *Coleman*, 501 U.S. at 756–57 ("a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review[.]"). *See also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

## V.   CONCLUSION

Because Petitioner's trial-level claim of ineffective assistance of counsel is not a substantial claim under *Martinez,* PCR counsel was not ineffective for failing to raise it. *See Clabourne,* 745 F.3d at 377. Consequently, Petitioner's procedural default is not excused and his federal habeas petition should be denied.

## VI. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, deny Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) as procedurally defaulted.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within **FOURTEEN (14) DAYS** after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within **FOURTEEN (14) DAYS** after being served with a copy. Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 15-00312-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to review.

The Clerk of Court is directed to send a copy of this Report and Recommendation to all parties.

Dated this 9th day of August, 2017.

Bernardo P. Velasco
United States Magistrate Judge